IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JACK EDWARD MILES, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 99-JEO-0924-S |
| RAYMOND McCARTY and CATERPILLAR INDUSTRIAL, INC., | ) |
| Defendants. | ) |

## MEMORANDUM OF OPINION

This matter is before the court on the motion to remand filed by Jack Edward Miles ("the plaintiff" or "Miles"). (Doc. 4).[1] Upon consideration of the same, the court finds that the motion is due to be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff originally filed a complaint in the Circuit Court of Jefferson County, Alabama, on April 14, 1998, seeking to recover damages from Caterpillar Industrial, Inc. ("Caterpillar"), and Raymond McCarty ("McCarty") as a consequence of a work-related injury that occurred while he was operating a forklift. (Doc. 1, Ex. 2). The plaintiff asserts that the forklift was manufactured by Caterpillar and that McCarty was his supervisor at the time of the incident. The plaintiff was deposed on December 22, 1998. (Doc. 20). Caterpillar filed its first request for admissions from defendant McCarty on March 26, 1999. (Doc. 1, Ex. 24). McCarty served his responses on Caterpillar on April 13, 1999. (Doc. 1, Ex. 25). Caterpillar filed its

---

[1] References herein to "Doc. ___" are to the pleading numbers assigned by the Clerk of the Court, which are found in the lower right hand corner of the particular pleading.



notice of removal on April 14, 1999. (Doc. 1). The plaintiff filed his motion to remand on May 5, 1999. (Doc. 4).

## II. MOTION TO REMAND

### A. Legal Principles

Under 28 U.S.C. § 1446, a defendant has thirty days, after receipt of the complaint, to file a notice of removal. 28 U.S.C. § 1446(b).[2] When it is not readily apparent from the initial pleading that the case is removable, a notice of removal must be "filed within thirty days after receipt . . . by the defendant of a copy of any paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). "In the fraudulent joinder context, a defendant has 30 days from the date that the fraudulent joinder could first be ascertained in which to file a notice of removal." *Delaney v. Viking Freight, Inc.*, 41 F. Supp. 2d 672, 674 (E.D. Tx. 1999). "The removing party has the burden to show that removal was properly accomplished." *Wakefield v. Olcott*, 983 F. Supp. 1018, 1020 (D. Kan. 1997), *citing Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1983). *See also Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996)(A removing defendant has the burden of proving the existence of federal jurisdiction). Since "removal is a purely statutory right . . . a

---

[2] Section 1446(b) provides:

>    (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
>    If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

court should strictly construe removal statutes in favor of state court jurisdiction." *Holder v. City of Atlanta*, 925 F. Supp. 783, 784-85 (N.D. Ga. 1996)(citations omitted). *See also Yazdtchi v. Khademi*, 1995 WL 131762, *3 (M.D. Ala. 1995)("A court must strictly construe the requirements of the removal statute as removal constitutes an infringement on state sovereignty).

"A party is deemed to be fraudulently joined if 'there is no arguably reasonable basis for predicting that state law might impose liability on that party under the facts alleged.'" *Delaney*, 41 F. Supp. 2d at 674 (citing *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979). The determination of whether or not a defendant is fraudulently joined is to be made based on the plaintiff's pleadings at the time of removal. *Cabalceta v. Standard Fruit Company*, 883 F.2d 1553, 1561 (11th Cir. 1989). The court must "evaluate all factual issues and questions of controlling substantive law in favor of the plaintiff." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), superseded by statute on other grounds as stated in *Georgetown Manor, Inc. v. Ethan Alan, Inc.*, 991 F.2d 1533 (11th Cir. 1993). The case which has been removed must be remanded to the state court, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants." *Crowe v. Coleman*, 113 F.2d 1536, 1538 (11th Cir. 1997), *citing Coker*, 709 F.2d at 1440.

### B. Discussion

Caterpillar's notice of removal asserts that McCarty is fraudulently joined. (Doc. 1). McCarty did not join in or consent to the removal. Caterpillar further asserts that the removal was timely because it could not be certain that the plaintiff could not establish a claim against McCarty until the responses to the request for admissions from McCarty were received. (Doc. 1, ¶ 6). The plaintiff's motion to remand asserts that the removal was untimely because "Caterpillar

3

could intelligently ascertain that Jack Miles might never prevail against Raymond McCarty, and Caterpillar could, in good faith, assert that Raymond McCarty had been fraudulently joined." (Doc. 4, ¶ 10). Caterpillar counters by again stating it "could not be certain that plaintiff could not establish a claim against the resident defendant [McCarty] under Alabama [law] until it received the resident defendant's response to [its] Requests for Admissions." (Doc. 10, ¶ 1). Accordingly, the issue is whether Caterpillar's notice of removal on April 14, 1999, was timely.

There is no reason to conclude that Caterpillar knew at the time the complaint was received that no legitimate cause of action could have been maintained by the plaintiff against McCarty. A reasonable reading of the complaint would not adequately place Caterpillar on notice of the existence of federal jurisdiction. The dispute, therefore, centers on whether Caterpillar was dilatory in removing the case after the deposition of the plaintiff on December 22, 1998.

Count I of the complaint alleges a claim against McCarty under § 25-5-11 of the *Code of Alabama*, which provides that an action may be brought against a co-employee in limited circumstances. In this case, a claim may be brought against McCarty only if his conduct was "willful." *Code of Alabama* § 25-5-11(b).[3] Caterpillar asserts that the responses to the request

---

[3] That section provides:

> (b) If personal injury or death to any employee results from the willful conduct, as defined in subsection (c) herein, of any officer, director, agent, or employee of the same employer or any workers' compensation insurance carrier of the employer or any person, firm, association, trust, fund, or corporation responsible for servicing any payment of workers' compensation claims for the employer, or any officer, director, agent, or employee of the carrier, person, firm, association, trust, fund, or corporation, or of a labor union, or an official or representative thereof, the employee shall have a cause of action against the person, workers' compensation carrier, or labor union.
>
> (c) As used herein, "willful conduct" means any of the following:
>
> (1) A purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting

4

for admissions from McCarty constitute the "other paper" that gave it notice that the case was subject to removal. The plaintiff counters that Caterpillar should have been able to determine from the complaint that McCarty would be liable only if it was shown that McCarty intentionally wanted to injure Miles or a third party. *Alabama Code* § 25-5-11(c)(1). According to the plaintiff, Caterpillar "could intelligently ascertain [after the December 22, 1998 deposition] that Jack Miles might never prevail against Raymond McCarty, and Caterpillar could, in good faith, assert that Raymond McCarty had been fraudulently joined." (Doc. 4, ¶ 10). He submits that the "obvious answers to its requests for admissions" from McCarty were unnecessary. (*Id.*, ¶ 12).

During the deposition, Miles stated that he worked on McCarty's crew for about two or three weeks before the accident. (Doc. 20, p. 160). Miles had used the forklift that was involved in the accident two times previously and he had seen other people operating it. (*Id.*, pp. 167-68). Miles stated that the maintenance work done on the forklift was not performed by a group supervised by McCarty (*id.*, pp. 42-43, 163-64), and he had never seen McCarty operate the forklift (*id*, p. 164) or discussing forklifts with anyone else (*id.*, p. 159). Miles also stated that he had no previous problems with the forklift involved in the incident or any other forklift that he

---

injury, then he or she is guilty of "willful conduct."

    (2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; . . . .

    (3) The intoxication of another employee of the employer if the conduct of that employee has wrongfully and proximately caused injury or death to the plaintiff or plaintiff's decedent, but no employee shall be guilty of willful conduct on account of the intoxication of another employee or another person.

    (4) Willful and intentional violation of a specific written safety rule . . . .

*Alabama Code* § 25-5-11(b) & (c).

used. (*Id.*, pp. 164, 169).[4] There was no animosity between Miles and McCarty. (*Id.*, p. 165). Miles further stated that he had never seen McCarty do anything unsafe and McCarty was a reasonable, prudent person. (*Id.*).

Miles stated that McCarty saw him operating the forklift on the day of the accident. (*Id.*, p. 156). When specifically asked what McCarty did to contribute to the accident, Miles stated:

> Told me to get on that forklift. The way I see it - - and this is for you lawyers to decide. But I'm a multi-craft apprentice and I had an understanding that he is responsible for me and my well-being on the job since he is my immediate supervisor, so I guess that's how this came to be about.

(*Id.*, pp. 193-94). A short while later, Miles stated, "Ultimately, Buddy McCarty that morning was the one who told me to work with these two guys [Mr. Frank and Mr. Gaylon] and that in turn is how I ended up on the forklift. . . ." (*Id.*, pp. 194-95). Through further examination by counsel, Miles stated that he was seeking recovery from McCarty premised on the fact McCarty assigned him to work with Mr. Frank and Mr. Gaylon and he had to operate the forklift to perform the work McCarty had assigned to Frank and Gaylon. (*Id.*, p. 195). He also asserted that McCarty was responsible because he "was the one who was ultimately above [Miles who w]as an apprentice on that particular crew." (*Id.*, pp. 195-96).

Caterpillar counters that due to the difficult burden of proving fraudulent joinder and the obligations under Rule 11 of the *Federal Rules of Civil Procedure*, it was not in a position to advance with the requisite certainty that the plaintiff would not be able to maintain a cause of action against McCarty. (Doc. 10, pp. 2-6). Specifically, Caterpillar states:

---

[4] During the deposition, Miles stated that he noticed some difficulty in steering the forklift on the morning of the accident. (Doc. 20, pp. 166-67). Miles brought the matter to the attention of two co-workers, "Gaylon and Frank." (*Id.*, 167-69). He did not recall what they said about it. (*Id.*, p. 168).

6

> .... Under the strictures of Rule 11, Caterpillar had to assume that plaintiff's counsel had good reason to believe the truth of the allegations made in the complaint and had facts to support them or a good faith belief that formal discovery or informal investigation would develop those facts. Not knowing what information plaintiff's counsel possessed or from what source, but presuming that plaintiff's counsel was not in violation of Rule 11, Caterpillar turned to the resident defendant, which plaintiff had failed to depose or otherwise develop testimony from during discovery. When added to plaintiff's testimony[,] the admissions of the resident defendant constituted the essential additional evidence to carry Caterpillar's burden that there was "no arguable reasonable basis for predicting that state law might impose liability" on the resident defendant. . . . It was at this point that Caterpillar was "first put on notice that all prerequisites for invoking federal jurisdiction" had been met. . . .

(*Id.*, ¶ 13)(citations omitted and emphasis in original).

In *Naef v. Masonite Corp.*, 923 F. Supp. 1504 (S.D. Ala. 1996), the plaintiffs originally brought suit in state court alleging that a siding manufacturer failed to "adequately design, formulate, and test its hardboard siding before distributing it and failed to remove it from the marketplace." *Naef*, 923 F. Supp. at 1506. The plaintiffs also sued for fraud and named various distributors. The plaintiffs filed a motion to remand after the defendants removed the case to federal court. The motion to remand asserted, *inter alia,* that the notice of removal was untimely in that "it came more than thirty days after Defendant could have intelligently ascertained that this action had become removable." *Id.*, at 1511. The court agreed. In reviewing this aspect of the plaintiffs' motion, the court set forth the applicable standard:

> When the initial pleading fails to provide at least a clue that the action is removable, the thirty day period does not begin. *See Richman v. Zimmer, Inc.*, 644 F. Supp. 540, 541 (S.D. Fla. 1986). In such a case, the thirty day time limit for notice of removal begins at the point when the defendant could have intelligently ascertained that the action was removable. *Kuhn v. Brunswick Corp.*, 871 F. Supp. 1444, 1446 (N.D. Ga. 1994). "'[T]he burden is on the defendant seeking removal to scrutinize the case and remove it in a timely fashion.'" *Id.* (quoting *Kaneshiro v. North Am. Co. for Life and Health Ins.*, 496 F. Supp. 452, 455-456, 462 (D. Haw. 1980)). Therefore, in the action before this Court, the

7

>Court must determine at what point Defendants could have intelligently ascertained that the action was removable through reasonable scrutiny of the pleadings and facts of the action as it developed in state court.

*Id.*, at 1512. The court reached the conclusion that the notice was untimely after first determining that the plaintiffs had not fraudulently joined the resident defendants and that the plaintiffs had not voluntarily dismissed those defendants. *Id.*, at 1511. One of the arguments presented by the defendants on the fraudulent joinder claim was that the plaintiffs did not intend to proceed with their claims against the resident defendants. *Id.*, at 1508. The defendants premised this assertion on three facts: (1) plaintiffs focused their state court arguments primarily "on the allegedly defective nature" of the siding, (2) the plaintiffs in a similar action, involving some of the same plaintiff attorneys, did not include siding dealers, and (3) the plaintiffs' failure to join other siding dealers even though the plaintiffs purportedly represented a nationwide class. The defendants cited *Mask v. Chrysler Corporation*, 825 F. Supp. 285 (N.D. Ala. 1993), *aff'd*, 29 F.3d 641 (11th Cir. 1994) in support of their position. Finding no merit to this assertion, the court distinguished *Mask* premised on the factual differences between the cases.[5] *Id.*, at 1509. The

---

[5] In distinguishing *Mask*, the court stated:

>In *Mask*, the named plaintiffs brought a state court action against the Chrysler corporation and against various local dealerships. The Court in *Mask* held that the various individual dealerships that handled Chrysler products had been fraudulently joined by the plaintiffs to avoid diversity jurisdiction. The Court made such a determination based on its review of the actions of the plaintiffs with respect to the dealerships. The Court found that: (1) one of the plaintiffs' attorney's affidavits showed that he never expected to collect from the dealers in this case; (2) another of plaintiffs' attorneys stated in a letter that "the totality of the problems were due to the manufacturing process;" (3) the history of cases filed against Chrysler dealerships showed that there was no possibility for the plaintiffs to establish a cause of action against the resident defendants; (4) except for one case, there was no case on record in which suit filed against a dealer had been successful; and (5) the deposition testimony of one of the named plaintiffs established that there was no legitimate claim against the non- diverse defendant. *Mask*, 825 F. Supp. at 288. Although Defendants in the action before this Court have alleged facts similar to the evidence before the *Mask* court, such facts, when viewed in a light most favorable to Plaintiffs, do not indicate that the resident Defendants were named solely to defeat diversity.

923 F. Supp. at 1508-09.

8

court then discussed the application of the particular facts in *Naef* and concluded that the removal was "defective because it was filed more than thirty days after Defendants could have intelligently ascertained that the action was removable." *Naef*, 923 F. Supp. at 1513.[6]

In *Delaney v. Viking Freight, Inc.*, 41 F. Supp. 2d 674 (E.D. Tx. 1999), the plaintiffs brought an action in state court to recover for injuries sustained by one of them in a work-related accident. The defendants removed the case to federal court on the ground of fraudulent joinder. The plaintiffs' challenged the timeliness of the removal, asserting that the defendants should have removed this action timely because (1) the defendants knew when they received the complaint that no legitimate cause of action could be maintained against the resident defendant or (2) they learned at the deposition of the injured plaintiff that he never worked for the resident defendant. The court agreed with the plaintiffs, finding that the defendants' first amended answer established that they were "well aware of the factual and legal ground for removing [the] case."[7] *Id.*, at 677. Concluding that "removability was first ascertainable" upon receipt of the state complaint, the court held that the removal was untimely. The court also found it was untimely because the deposition triggered the 30-day period because the plaintiff specifically stated that he did not work for the resident defendant.

---

[6] In discussing the procedurally defective notice of removal, the court stated,

> According to the Defendants, Plaintiffs were deposed during discovery and "none of the named Plaintiffs identified any facts that would indicate liability on the part of the retailers." . . . Therefore, giving Defendants every benefit of doubt possible, the Court finds that the latest date on which Defendants could have ascertained that the action was removable based on lack of privity was the date of the last of the named Plaintiffs' depositions. . . .

923 F. Supp. at 1512.

[7] The amended answer stated "that [the resident defendant] cannot be liable in this action because it has never been [the plaintiff's] employer, it did not exist at the time of [the plaintiff's] alleged injury, and it has never assumed liability for the claims of [the predecessor company's] employees." *Delaney*, 41 F. Supp. 2d at 675.

In the recent case of *Huffman v. Saul Holdings Limited Partnership*, 194 F.3d 1072 (10th Cir. 1999), the plaintiffs filed a breach of contract and recission action in state court against the defendants. The defendants removed the case to federal court and filed a motion for summary judgment. The plaintiffs filed a motion to remand. The plaintiffs' complaint sought $10,000 in actual and punitive damages. They better defined their damages "[l]ater in the litigation." *Huffman*, 194 F.3d at 1075. At a deposition, on April 28, 1997, one of the plaintiffs testified that they were seeking damages in excess of $300,000. *Id.*, at 1076. The plaintiffs also produced an expert report on June 3, 1997, at the expert's deposition, wherein he calculated damages at $1,900,000. *Id.* The notice of removal was filed on June 25, 1997. The district court determined that neither the initial pleading nor the plaintiff's deposition testimony provided the defendant with proper notice that the jurisdictional amount was in controversy. "According to the district court, '[s]uch notice was not given until Defendant received Plaintiff's damage analysis and economic figures on June 3, 1997.'" The court subsequently granted the defendant's motion for summary judgment.

The plaintiffs appealed, asserting, *inter alia*, that the removal was untimely. The court stated:

> Under § 1446(b), the removal period does not begin until the defendant is able "to intelligently ascertain removability so that in his petition for removal he can make a simple and short statement of the facts." *DeBry v. Transamerica Corp.*, 601 F.2d 480, 489 (10th Cir. 1979). "If the statute is going to run, the notice ought to be unequivocal. It should not be one which may have a double design." *Id.* Moreover, the circumstances permitting removal must normally come about as a result of a voluntary act on the part of the plaintiff. *See id.* at 486-88.

*Id.* The court also adopted the majority rule that a deposition constitutes "other paper" within the meaning of § 1446(b). *Id.* In so finding, the court provided:

10

> For several reasons, we adopt the majority rule. The intent of the statute is to "mak[e] sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists." *Wright, et al., supra* at 306. Unquestionably, information elicited during a deposition may serve that purpose. For purposes of the removal statute, deposition testimony stands on equal footing with written forms of discovery, such as interrogatories and requests for information.
>
>> A defendant cannot forgo one recognized means of obtaining information related to jurisdiction for another and then argue that the manner in which the information was provided, which was in compliance with defendant's request, precludes imputing knowledge of the information to the defendant. Such manipulation would provide a windfall for the defendant which is clearly contravened by the removal statute's emphasis on effecting removal as soon as possible.
>
> *Golden Apple Management Co. v. GEAC Computers, Inc.*, 990 F. Supp. 1364, 1368 (M.D. Ala. 1998) (citation omitted). We hold that deposition testimony, taken under state rules of procedure during the course of litigation in the state court, qualifies as an "other paper" under § 1446(b).

*Huffman*, 194 F.3d at 1078. The court concluded that the deposition testimony of one of the plaintiffs triggered the thirty day period of removability. *Id.*, at 1079. The court found that at the conclusion of the deposition, the defendant "had the benefit of a petition setting out the factual premise of plaintiff's lawsuit; financial documents produced in discovery; and, most importantly, the voluntary and unequivocal testimony of [plaintiff] that plaintiffs were seeking $300,000 in damages. This combination of materials was sufficient to put [defendant] on notice that the amount in controversy exceeded the jurisdictional minimum." *Id.* Accordingly, the removal was untimely.

In *DeBry*, which was cited in the *Huffman* opinion, the court examined the meaning of the word "ascertained" and stated that *Webster's New Collegiate Dictionary* (1975) defines the term "ascertain" as "to find out or learn with certainty." *DeBry*, 601 F.2d at 489. The court held

that although the deposition of the plaintiff "might have placed the person on inquiry, it was not sufficient to permit him to learn with certainty." *Id*. The court premised this conclusion on the observation that the plaintiff had been "noncommittal" during the deposition. *See also Akin v. Ashland Chemical Company*, 156 F.3d 1030, 1035 (10th Cir. 1998)("In *DeBry* . . ., we held that 'if the statute is going to run, the notice ought to be unequivocal. It should not be one which may have a double design.' We further ruled that 'ascertained' . . . means a statement that 'should not be ambiguous' or one which 'requires an extensive investigation to determine the truth.'"), *cert. denied* , ___U.S.___, 119 S. Ct. 1756 (1999).

A review of the foregoing authorities makes it clear that the issue of timeliness is a fact-intensive inquiry. None of the foregoing authorities are factually identical to the present matter. Each case must be reviewed and resolved on the peculiar facts presented. Accordingly, the court will proceed to review the present case, applying the pertinent facts to the legal standards set forth above.

First, after reviewing the original complaint, the court finds that it contains nothing enabling Caterpillar to ascertain that the plaintiff had no cause of action against McCarty. Neither does Caterpillar's answer show that counsel for Caterpillar knew of any deficiency in the plaintiff's claim against McCarty.

Second, on May 20, 1998, McCarty filed a three-line motion to dismiss the complaint as to him for failure to state a claim. There was no supporting brief or other pleading. The motion summarily was denied by the state court on June 3, 1998. (Doc. 1, Ex. A, Pleading 6). Nothing in these documents evidence that McCarty was fraudulently joined.

Third, counsel for the plaintiff has not indicated that they expect the claims against

McCarty to fail. They do not concede that McCarty is not liable. To the contrary, in the plaintiff's reply memorandum brief submitted in support of the motion to remand, counsel states, "In the motion to remand, Jack Miles never conceded that Raymond McCarty was fraudulently joined as a party-defendant or that Raymond McCarty could never be held legally accountable under applicable Alabama substantive law." (Doc. 11, p. 1).

Fourth, the plaintiff was deposed by counsel for the defendants on December 22, 1998. The sum and substance of the testimony demonstrated that there was no animosity between Miles and McCarty, McCarty had no knowledge of any danger concerning the forklift, and McCarty was a reasonable and prudent person. Nothing in the complaint or the deposition indicates that any safety guard or device was removed from the forklift, that McCarty was intoxicated, or that any specific written safety rule was violated. Thus, by December 22, 1998, the plaintiff had failed to demonstrate any factual basis for liability concerning McCarty. His deposition testimony on that date made it evident that there was no basis for co-employee liability under Alabama law.

Approximately three months after the deposition, Caterpillar submitted its request for admissions to McCarty. The responses unequivocally demonstrate that the plaintiff cannot maintain an action against McCarty. If the court finds that the deposition was sufficient notice for purposes of commencing the 30-day period for filing a notice of removal, the present notice is untimely. If the court finds that the deposition is insufficient, and the answers to the request for admissions is the triggering event, the notice is timely.

Upon lengthy consideration, the court finds that at the conclusion of Miles' deposition, Caterpillar had learned with sufficient "certainty" that McCarty was fraudulently joined. Neither

the complaint nor Caterpillar's answer provides sufficient evidence of fraudulent joinder to have allowed Caterpillar to ascertain with sufficient certainty that the action was removable. The December 22, 1998, deposition, however, demonstrated that the plaintiff lacked any basis in theory or fact for McCarty's liability. At this juncture, Caterpillar could have easily ascertained that this case was removable. To find otherwise would encourage a defendant to delay filing a notice of removal. This finding is consistent with the general principles applicable in determining whether a case is removeable, including that the removal statutes are to be construed narrowly (*Webster v. Dow United Technologies Composite Products, Inc.*, 925 F. Supp. 727, 729 (M.D. Ala. 1996)), they are to be strictly applied in favor of state court jurisdiction (*Holder*, 925 F. Supp. 784-85), and the removing party has the burden to show that removal was properly accomplished (*Wakefield*, 983 F. Supp. at 1020).

In reaching this conclusion, the court is mindful of Caterpillar's concerns under Rule 11 of the *Federal Rules of Civil Procedure* and the fact that Miles continues to contest McCarty's liability.[8] Caterpillar's Rule 11 concerns are driven by the fact that the standard for determining whether a defendant has been fraudulently joined is stringent, requiring that there be "no possibility" that the plaintiff can establish a cause of action against the resident defendant. *Cabalceta*, 883 F.2d at 1561. However, these matters do not alter the burden thrust upon a defendant to remain vigilant in ascertaining when the time for removing a state court action to federal court commences.

Whether a defendant can reasonably ascertain removability, as noted above, is a very fact

---

[8] Most recently in the plaintiff's response to the motion to dismiss, or in the alternative, for summary judgment, counsel asserts that this court should allow Miles to depose McCarty before ruling on the motion. (Doc. 9, p. 4).

specific inquiry. Under the circumstances in this case, the court finds that Caterpillar could have intelligently ascertained at the date of Miles' deposition, on December 22, 1998, that this action was removable. The answers to the request for admissions merely confirm that the action was removable, which was ascertainable on December 22, 1998, after Miles was not able to elucidate any basis for holding McCarty liable. This court does not want to encourage a defendant to "'guess' as to an action['s] removeability, thus encouraging premature, and often unwarranted removal requests"; but, the facts presented at Miles' deposition were sufficient for Caterpillar to ascertain that this matter was removable without the necessity of the McCarty's answers to the request for admissions over three months later. *Richstone v. Chubb Colonial Life Insurance*, 988 F. Supp. 401, 403 (S.D.N.Y. 1997), *citing Rowe v. Marder*, 750 F. Supp. 718, 721 (W.D. Pa. 1990), *aff'd* 935 F.2d 1282 (3rd Cir. 1991).

## IV. CONCLUSION

For the foregoing reasons, the court finds that the notice of removal was untimely. Accordingly, the court further concludes that the plaintiff's "Motion to Remand" (doc. 4) is due to be granted and the case returned to the Circuit Court of Jefferson County, Alabama. An appropriate order will be entered.

**DONE,** this the 10th day of January, 2000.

John E. Ott
JOHN E. OTT
UNITED STATES MAGISTRATE JUDGE